IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EPIC TECHNOLOGY, LLC,<br><br>                  Plaintiff,<br><br>v.<br><br>FITNOW, INC.,<br><br>                  Defendant. | **MEMORANDUM DECISION AND ORDER ON FITNOW'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br><br>Case No. 2:15-CV-00442-DB<br><br>District Judge Dee Benson |

      Epic Technology, LLC ("Epic") owns a patent—No. 8,275,633 ('633 patent)—claiming methods and systems for providing real time health information utilizing a bar code or RF ID reader on a handheld device. Epic sued Fitnow, Inc. ("Fitnow") for infringement of the '633 patent. Fitnow filed this Motion for Judgment on the Pleadings ("Fitnow's Motion"), asserting that the '633 patent is invalid under 35 U.S.C. § 101 for claiming subject matter that is ineligible for patenting. Fitnow argues that the '633 patent claims the "abstract idea" of keeping a nutritional log and, therefore, is ineligible under § 101. For the reasons set forth below, Fitnow's Motion is granted.

BACKGROUND

      The '633 patent recited two independent claims—claims 1 and 9. Claim 1 from the '633 patent recites:

      1. A method for obtaining health information comprising the acts of:
      using a computing device, scanning a product bar code and obtaining a product identity;
      using the computing device, obtaining a health information corresponding to the product
           identity;
      using the computing device, recording the health information and product identity;

>  using the computing device, assigning the recorded health information and the recorded product identity to a particular health category;
>  using the computing device, displaying a record over a particular time period including the recorded health information and product identity; and
>  wherein the acts are performed in the order listed above.

Claim 9 from the '633 patent recites:

>  9. A handheld computing device comprising:
>  a scanning device configured to obtain a product identity from a bar code;
>  a correlation module that is configured to correlate the product identity obtained by the scanning device with information about the product, wherein the information includes health information;
>  wherein the correlation module is configured to assign the product identity obtained by the scanning device and the information about the product correlated by the correlation module to a particular category;
>  a memory module configured to store the information about the product correlated by the correlation module and the particular category assigned by the correlation module;
>  a display that is configured to visually display the information about the product and the particular category stored by the memory module; and
>  wherein the inherent steps used by the scanning device, correlation module, memory module, and display module are performed in the sequence listed above.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed . . . but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings filed by a defendant is treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1160 (10th Cir. 2000). On a Rule 12(b)(6) motion, the court judges the sufficiency of the complaint, accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if

everything alleged in the complaint is true." *Ericksen v. Johnson*, No. 2:09-CV-329 TC, 2011 WL 1226094, at *1 (D. Utah Mar. 29, 2011) (citations omitted) (internal quotations omitted). A judgment on the pleadings is properly granted when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (internal quotation marks omitted).

Issues of patent-eligible subject matter are questions of law. *Research Corp. Techs., Inc. v. Microsoft Corp.,* 627 F.3d 859, 867 (Fed.Cir.2010). Under the Patent Act, all patents are "presumed valid," and "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) [is] presumed valid independently of the validity of other claims." 35 U.S.C. § 282(a). The party challenging the validity of a patent bears the burden of proving invalidity by clear and convincing evidence. *Eimco Corp. v. Peterson Filters & Eng'g Co.*, 406 F.2d 431, 434 (10th Cir. 1968) (citations omitted); *see also* 35 U.S.C. § 282(a) ("The burden of establishing invalidity of a patent or any claim thereof...rest[s] on the party asserting such invalidity.").

## PATENT ELIGIBILITY UNDER 35 U.S.C. § 101

The United States Supreme Court in interpreting 35 U.S.C. § 101 recognized three categories of patent ineligible subject matter: laws of nature, physical phenomena, and abstract ideas. *Bilski v. Kappos,* 130 S. Ct. 3218, 3225 (2010) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). These categories are often referred to as judicial "exceptions" to the otherwise "wide scope" of § 101 patent eligibility. *Id.* at 3225.

An "abstract idea" for purposes of 35 U.S.C. § 101 is a "mental process[]" or "abstract intellectual concept[]." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289,

1293 (2012) (internal quotation marks omitted) (quoting *Gottschalk v. Benson,* 409 U.S. 63, 67 (1972)). The Court has made clear that § 101 does not cover processes employing a computer to perform steps that people can do in their heads, or manually with pencil and paper. *See, e.g., Benson*, 409 U.S. at 66, 67 (invalidating patent claims to a process that "can be done mentally"); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) (citing *Parker v. Flook,* 437 U.S. 584, 586 (1978), where the Court noted that "the calculations, while 'primarily useful for computerized [applications],' could still 'be made [using a] pencil and paper.'").

Although the definition of "abstract idea" for purposes of 35 U.S.C. § 101 has not been well defined, the policy underlying this categorical exception has been clearly stated by the Court—to avoid patents that "too broadly preempt the use of a natural law [or abstract idea]." *Mayo,* 132 S. Ct. at 1294. Thus, the abstract idea exception to patentability should be applied to avoid preemption of the fundamental building blocks needed by second-comers and improvers. *See id.* at 1301 (emphasizing that patent law should "not inhibit further discovery by improperly tying up the future use of laws of nature [or abstract ideas]"). Because even valid patents circumscribe future innovation, a § 101 inquiry must strike a balance: patents should not "foreclose[ ] more future invention than the underlying discovery could reasonably justify." *Id.* at 1301; *see also Bilski,* 130 S. Ct. at 3230–31 (upholding the patent "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea"); *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) ("[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws . . . We have repeatedly

emphasized this . . . concern that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity.") (internal quotation marks omitted) (citations omitted). The building blocks covered by the three judicial exceptions to patentability are "part of the storehouse of knowledge of all men...free to all men and reserved exclusively to none." *Funk Brothers Seed Co. v. Kalo Inoculant Co.,* 333 U.S. 127, 130 (1948). Accordingly, in applying the § 101 exception, reviewing courts "must distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more." *Alice Corp.*, 134 S. Ct. at 2354 (quoting *Mayo*, 132 S. Ct., at 1303).

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, and again most recently in *Alice Corp. Pty. v. CLS Bank Int'l*, the Court created a two-part test for distinguishing patents that claim ineligible subject matter from those that claim "patent-eligible *applications* of those concepts." *Id.* at 2354–55 (emphasis added). First, this Court must determine whether the disputed claims are directed to subject matter falling into one of the patent-ineligible categories. *Mayo*, 132 S. Ct., at 1296–97. If so, the Court moves to step two, which is to determine whether the claims recite "significantly more" than the ineligible concept itself. *Id.* at 1294. This step has been called the "search for an inventive concept." *Alice Corp.*, 134 S. Ct. at 2355. The inventive concept must "transform the nature of the claim" into a patent-eligible application of the patent-ineligible concept. *Mayo*, 132 S. Ct. at 1297, 1298. The validity of the '633 patent will be analyzed under each step of this framework and discussed below.

ANALYSIS UNDER THE *ALICE*/*MAYO* FRAMEWORK

Step 1: Abstract Idea

The first step of the *Alice*/*Mayo* framework is to determine whether the patent claims subject matter that falls into one of the patent-ineligible categories. Fitnow's motion focuses on the "abstract idea" category, so this Court must first decide whether the '633 patent claims are directed towards a patent ineligible abstract idea. The Supreme Court has never given a precise definition of what constitutes an "abstract idea" for purposes of 35 U.S.C. § 101. Instead, it points towards the "guideposts" laid out in precedent. *Bilski*, 130 S. Ct. at 3222. For example, in *Benson*, the Court held that claims directed towards the conversion of BCD numerals to pure binary numerals were ineligible under the abstract idea exception because these steps could be performed mentally. *Benson,* 409 U.S. at 67. In holding that the patent claims were ineligible subject matter, the Court emphasized that "[t]he mathematical procedures [could] be carried out in existing computers long in use, no new machinery being necessary…[or] without a computer." The Court made the generalized observation that "mental processes*,* and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* Again in *Parker v. Flook*, the Court found that the disputed claims encompassed an abstract idea because "the calculations, while 'primarily useful for computerized [applications],' could still 'be made [using a] pencil and paper.'" *Flook*, 437 U.S. at 586 (citations omitted). The method claims invalidated in *Flook* were directed towards a "new and presumably better method for calculating alarm limits" for alarms that monitor process variables (such as temperature) during the catalytic chemical conversion of hydrocarbons. *Id.* at 585–86.

The Federal Circuit, adopting the Court's philosophy that mental processes fall under the "abstract idea" exception to patentability, has invalidated claims directed toward the "collection and organization of data." *CyberSource*, 654 F.3d at 1370. In *CyberSource*, the disputed claim encompassed the steps of "obtain[ing] and compar[ing] intangible data pertinent to business risks." *Id.* The CyberSource court held that these claims were "clear[ly] . . . unpatentable mental processes" because they could "be performed in the human mind, or by a human using a pen and paper." *Id.* at 1372. Again in *DietGoal*, a post-*Alice Corp.* decision, the Federal Circuit affirmed a district court's invalidation of claims directed toward the "abstract idea of meal planning." *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 273 (S.D.N.Y. 2014) *aff'd,* 599 F. App'x 956 (Fed. Cir. 2015). The district court described the claimed subject matter as: "a process for computerized meal planning; in essence, it recites a computer program that allows the user to create meals from a database of food objects according to his or her preferences and dietary goals, to change those meals by adding or subtracting food objects, and to view the dietary impact of changes to those meals on a visual display." *DietGoal Innovations LLC*, 33 F. Supp. 3d at 283. Citing the Supreme Court's "can 'be performed in the human mind, or by a human using a pen and paper'" test, *id.* at 284 (citations omitted), the court found the claims were invalid because they "recite nothing more than the abstract concept of selecting meals for the day, according to one's particular dietary goals and food preferences." *Id.* at 283. The court emphasized: "[t]hese are conventional and quotidian tasks. A person can perform them without the aid of any particular or structured method and without the need of any technology." Because the claims "merely 'provide[] a new and presumably better method' for calculating and visualizing the dietary impact of certain food choices," the claims were invalid. *Id.* at 284 (citing

*Flook,* 437 U.S. at 593, 594). The court emphasized that such mental processes are "not the kind of 'discover[y]' that § 101 was designed to protect." *Id.* (citations omitted).

Claims 1 and 9 of Epic's '633 patent fall squarely within the "collection and organization of data" characterization of *CyberSource* and the "conventional and quotidian task[]" which can be performed without "any particular or structured method and without the need of any technology" characterization of *DietGoal*. *CyberSource*, 654 F.3d at 1370; *DietGoal Innovations LLC*, 33 F. Supp. 3d at 284. Claim 1 is a method claim and Claim 9 is the corresponding system claim for carrying out the method of Claim 1. Both are directed towards collecting product information via a bar code, recording the data, organizing the data, and displaying it to a user. Claim 1 recites the steps of: scanning a bar code, obtaining the product identity and health information, recording this data, organizing the data by health category, and displaying the data (in organized form) to a user. These steps encompass the abstract idea of keeping a nutritional log, which is precisely the type of "conventional and quotidian task[]" that can be performed wholly by the human mind, or by a human with pencil and paper, without the use of a computer. A user could accomplish the same task by looking up the product identity and nutritional information manually, and keeping a written log of the product information using a pencil and paper. The '633 patent specification repeatedly emphasizes that the invention can be performed manually, without a computer: "the invention may also be practiced in whole or in part manually following the same procedures" ('633 patent, 4: 22–23); "[i]t should be noted that any of the acts described above may be performed manually or in some combination between a computer device and a manual operation" ('633 patent, 8: 58–60).

Claim 9 is simply the corresponding system claim for implementing the method of Claim 1. The Supreme Court invalided such corresponding system claims in *Alice Corp.*: "the system claims recite a handful of generic computer components configured to implement the same [abstract] idea." *Alice Corp.*, 134 S. Ct. at 2360. As such, the invention of both Claims 1 and 9 are directed toward the abstract idea of keeping a nutrition log and are ineligible for patenting unless they also claim an inventive concept that renders the subject matter "significantly more" than the abstract idea itself.

Step 2: Significantly More

Epic argues that the patent's recitation of physical products and barcodes renders the claimed subject matter significantly more than an abstract idea. (Dkt. 23 at 1.) Epic argues that the '633 patent claims are directed towards "obtaining and transforming manually unreadable information about physical products from physical barcodes." (Dkt. 23 at 1.) However, the patent specification itself contradicts this argument and stresses that "[i]t should be noted that any of the acts described above may be performed manually or in some combination between a computer device and a manual operation" ('633 patent, 8: 58–60). Epic argues that the patent teaches the use of a computer to transform the physical barcode on a product into useful health information. (Dkt. 23 at 2.) However, this argument also fails.

The *Alice Corp.* Court categorically established a clear rule that had previously been subject to some debate: "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice Corp.*, 134 S. Ct. at 2358; *see also KomBea Corp. v. Noguar L.C.,* 73 F. Supp. 3d 1348, 1357 (D. Utah 2014) (the fact that patents are "directed toward abstract ideas that are more efficiently executed with the use of a generic

computer does not make the patents eligible for [§ 101] protection"). The *Alice Corp.* Court emphasized that "[s]imply appending conventional steps, specified at a high level of generality," is not enough to supply "an inventive concept." *Alice Corp.*, 134 S. Ct. at 2357 (citations omitted). The '633 patent's recitation of a generic "computing device" and conventional "bar code[s]" is insufficient for transforming the abstract idea into something that is patent eligible. The Court has cautioned against allowing generic recitation of a computer or other conventional technology to transform an ineligible concept into patent eligible subject matter. Such a strategy would render patent eligibility dependent upon the "draftsman's art." *Alice Corp.*, 134 S. Ct. at 2351 (citing *Mayo*, 132 S. Ct., at 1294) (internal quotations omitted). The Court has emphasized:

> The notion that post-solution activity, no matter how conventional or obvious in itself, can transform an unpatentable principle into a patentable process exalts form over substance. A competent draftsman could attach some form of post-solution activity to almost any [abstract idea]; the Pythagorean theorem would not have been patentable, or partially patentable, because a patent application contained a final step indicating that the formula, when solved, could be usefully applied to existing surveying techniques. The concept of patentable subject matter under § 101 is not 'like a nose of wax which may be turned and twisted in any direction . . . .'

*Flook*, 437 U.S. at 590 (1978) (citations omitted).

The '633 patent recites only a generic "computing device" and conventional "bar code[s]." The '633 patent specification emphasizes the generic nature of the computing device: "The bar code or RF ID reader for both embodiments may be incorporated into any existing handheld device including a PDA, cell phone, calculator, watch, or shopping device" ('633 patent, 2: 20–23); "The computer executable instructions include data structures, objects, programs, routines, or other program modules that may be accessed by a processing system, such

as one associated with a *general purpose computer capable of performing various different functions*" ('633 patent, 4:27–32) (emphasis added).

The generic recitation of a computing device and conventional bar code technology in Claim 1 is insufficient for supplying an inventive concept to the abstract idea embodied by the claim. As mentioned above, Claim 9 recites merely "a handful of generic computer components configured to implement the same [abstract] idea" as Claim 1. *Alice Corp.*, 134 S. Ct. at 2360. As such, Claims 1 and 9 are invalid under 35 U.S.C. § 101 as being directed towards an abstract idea without an inventive concept to transform the claims into significantly more than the abstract idea itself.

Dependent Claims 2–8 and 10–11 add simply more "collection and organization of data" steps, using generic and conventional technology. Claims 2–8 add the unremarkable steps of: identifying and displaying an undesired ingredient (Claim 2); organizing the data so as to recognize a pre-determined threshold nutritional value (Claim 3); organizing the product data into a health budget and displaying it (Claim 4); organizing the data into a health record over time and displaying it (Claim 5); receiving an RF ID code during the scanning step (Claim 6); employing a bar code reader at close proximity to the product (Claim 7); and correlating the data with information from non-scanned products (Claim 8). Claims 9–11 are merely the corresponding system claims for implementing the methods of claims 2–8, which do nothing more than "recite a handful of generic computer components configured to implement the same [abstract] idea." *Alice Corp.*, 134 S. Ct. at 2360. Accordingly, all claims of the '633 patent are invalid under 35 U.S.C. § 101.

RULE 12(C) MOTION IS NOT PREMATURE

In ruling on whether a patent claims eligible subject matter pursuant to 35 U.S.C. § 101, the Court need not first engage in claim construction. *Cyberfone Sys., L.L.C. v. CNN Interactive Grp.*, 558 Fed.Appx. 988, 991 n. 1 (Fed. Cir. 2014) (unpublished) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility"); *I/P Engine, Inc. v. AOL, Inc.*, 576 Fed. Appx. 982, 996 (Fed. Cir. 2014) (Mayer, J., concurring) ("Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation."). Here, the Court finds that § 101 eligibility is "readily ascertainable from the face of the patent" and that it can rule on the instant motion without first issuing a claim construction order. *Concaten, Inc. v. Ameritrak Fleet Sols., LLC*, No. 14-CV-00790-PAB-NYW, 2015 WL 5579562, at *3 (D. Colo. Sept. 23, 2015) (internal quotation marks omitted). The Court finds that all of the claims of the '633 patent are invalid "under any reasonable construction." *DietGoal Innovations* LLC, 33 F. Supp. 3d at 289; *see also Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189, 205 (S.D.N.Y. 2013) ("No components [of the claims] are opaque such that claim construction would be necessary to flush out its contours" while invalidating on 101 grounds).

CONCLUSION

In sum, all of the claims of the '633 patent are directed towards the abstract idea of keeping a nutrition log and are invalid on grounds of 35 U.S.C. § 101 because they fail to claim an inventive concept, above and beyond the abstract idea itself. For the reasons stated above, Fitnow's Motion for Judgment on the Pleadings is granted.

DATED this 7th day of December, 2015.

                    BY THE COURT:

                    Dee Benson
                    United States District Judge